IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HAKIM ALI BRYANT,                        :     CIVIL ACTION
                                         :     NO. 10-3871
          Plaintiff,                     :
                                         :
     v.                                  :
                                         :
CITY OF PHILADELPHIA, et al.,            :
                                         :
          Defendants.                    :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              SEPTEMBER 12, 2012


I.        **INTRODUCTION**

     Hakim Ali Bryant ("Plaintiff") brings this civil rights
action against the City of Philadelphia, Police Officer Chim,
Police Officer Cullen and Police Officer Ferrero (collectively
"Defendants"). Plaintiff alleges that, on January 22, 2010, he
was handcuffed and arrested for a drug charge for "which he was
mistakenly pointed out." Plaintiff claims that during the
arrest, Officer Ferrero assaulted him by punching and kicking
him during the arrest. Plaintiff also alleges that fellow Police
officers Chim and Cullen watched as this assault occurred.
Plaintiff says that as a result he suffered face, neck, and back
injuries. Plaintiff filed this complaint pursuant to 42 U.S.C. §
1983, alleging violations of his First, Fourth, Sixth, Eighth,
and Fourteenth Amendment rights, including false arrest, false

imprisonment, excessive force, malicious prosecution, abuse of process, and failure to intervene. Plaintiff proceeded pro se in this matter. At the trial he was permitted to testify by giving a narrative with the assistance of the Court. Both defendants were represented by the same counsel for the City Solicitor's Office.

Following a bench trial and pursuant to Federal Rule of Civil Procedure 52(a), this Memorandum constitutes the Court's findings of fact and conclusions of law. For the reasons that follow, the Court will enter judgment in favor of Defendants Ferrero and Cullen and against Plaintiff on all remaining claims.

## II.  PROCEDURAL BACKGROUND

On April 21, 2011, Defendants filed a motion for summary judgment. Defs. Mot. for Summ. J., ECF No. 19. In their motion for summary judgment, Defendants provided exhibits indicating that Plaintiff was formally charged with intentional possession of a controlled substance subsequent to his arrest. Id. Ex. D. Plaintiff pled guilty to the charge and received nine months of probation. Bryant Dep. 79:18-20, Mot. for Summ. J. Ex. C.

The Court granted Defendants' Motion for Summary Judgment on all of Plaintiff's claims against Defendant City of Philadelphia and Defendant Chim as well as on all claims pursuant to the First, Sixth, Eighth, and Fourteenth Amendments. See Mem. Op. 3, Jan. 27, 2012, ECF No. 24. The Court also granted Defendants Cullen and Ferrero's summary judgment motion on Plaintiff's claim for false arrest, but denied summary judgment on Plaintiff's failure to intervene claim against Defendant Cullen. Id. Therefore, the case proceeded to trial only as against Defendants Ferrero and Cullen on Plaintiff's claims of excessive force, malicious prosecution, abuse of process, and failure to intervene claims. See id.; Order, Jan. 27, 2012, ECF No. 24.

On March 21, 2012, this Court held a final pretrial conference in the case and gave Plaintiff thirty days to consult with at least three attorneys to assess whether they would be willing to represent him in this case. After a discussion with Plaintiff about his inability to retain counsel on April 26, 2012, the Court scheduled a non-jury trial upon Plaintiff's request. ECF Nos. 29, 30.

On June 20, 2012, the Court held a bench trial at the conclusion of which it heard closing argument. The Court has reviewed all of the admitted evidence in this case: Plaintiff's testimony, Officer Ferrero's testimony, Officer Cullen's

3

testimony, and each party's supporting exhibits. Upon this
record, the Court makes its findings of facts and conclusions of
law.

**III. JURISDICTION**

The Court has jurisdiction over Plaintiff's constitutional and
federal law claims. See 28 U.S.C. §§ 1331, 1343 (2006).

**IV. FINDINGS OF FACT[1]**

On January 22, 2010, Plaintiff was in the vicinity of
the Gallery Mall in Philadelphia, Pennsylvania, at 10th and
Market Streets. Trial Tr. 10:18-24, June 20, 2012, ECF No. 33.
Defendant Police Officers Joseph Ferrero ("Defendant Ferrero")
and Kevin Cullen ("Defendant Cullen") were out of uniform, on
patrol in an area including 10th and Market Streets in a
plainclothes capacity for narcotics enforcement. Id. at 71:4-11,
137:3-24. Defendant Ferrero first saw Plaintiff on the corner of
10th and Market Streets walking northbound as Defendant Ferrero
was walking behind him. Id. at 73:2-6. Defendant Ferrero
observed Plaintiff stop midway through the block where there
were two males, a Hispanic male,[2] and a taller white male. Id. at

---

[1] The findings of fact are presented by way of narrative. See Fed
R. Civ. P. 52(a).

[2] The witness did not define what he meant by "Hispanic male," or
further describe any physical characteristics of the individual.

4

73:21-25. Defendant Ferrero overheard Plaintiff engage in a conversation with the Hispanic male, in which he said "Hey, let me get 13." Id. at 74:7-8.

Defendant Ferrero, who had been on the phone with Defendant Cullen, told Defendant Cullen that it looked like there was going to be a deal between Plaintiff and these individuals and walked approximately twenty feet past the three individuals. Id. at 74:7-11. Defendant Cullen was on the west side of 10th Street, facing north, when Defendant Ferrero, over the phone, directed his attention to three individuals standing at the corner of 10th and Market Streets. Id. at 138:12-24. While walking past Plaintiff and the two males, Defendant Ferrero observed Plaintiff hand the Hispanic male an undetermined amount of United States currency, and then the Hispanic male placed the currency into his pocket, retrieved a clear plastic baggie from his left jacket pocket, and counted out with a pinching motion thirteen individual pills. Id. at 74:12-22. At that time, Defendant Ferrero who was still on the phone with Defendant Cullen, told him what he was observing. Id. at 74:23-24.

Defendant Cullen had initially taken a brief look at the individuals, but focused on remaining concealed in the pedestrian traffic, until Defendant Ferrero informed him that a drug transaction had taken place amongst the individuals,

5

including Plaintiff. Id. at 138:19-139:3. Once Defendant Ferrero
informed him of the transaction, Defendant Cullen crossed 10th
Street from west to east toward Plaintiff and the other
individuals, identified himself as a police officer, and said
"hands, let me see your hands." Id. at 138:25-139:13, 75:3-7.[3]

Plaintiff testified that he was walking out of the
mall with a Hispanic male, when a white male approached him
attempting to sell him SEPTA tokens. Id. at 11:9-16. He states
that as he was pulling money from his pocket, Defendant Cullen,
who was across the street drew his gun and said "Freeze or I'll
blow your fucking head off." Id. at 11:15-21. However, the
Court, as fact finder, does not find Plaintiff's version of the
facts persuasive, as Defendants have provided corroborating
evidence of the fact that Plaintiff was engaged in a drug
transaction. See Criminal Conviction 3, Defs.' Ex. 3. Plaintiff
himself also corroborates the Defendants' version of the facts
as he admits that he subsequently pled guilty to a misdemeanor
charge of "intentional possession of a controlled substance" and
was sentenced to a maximum term of nine months of probation

---

[3] During the trial, the Court supplied the parties with a hand
drawn map of the site of the incident. Court's Ex. 1. Plaintiff
and Defendants agreed that the area marked with a number one was
where Defendant was located at the corner of 10th and Market
Streets. Id. at 33:2-34:17. The area marked with number two was
where Officer Cullen was located, on the opposite side of 10th
Street. Id.

based upon the conduct which occurred on January 22, 2010. Trial
Tr. 44:2- 47:22; see also Criminal Conviction 3.

Once Defendant Cullen identified himself as a police
officer, Plaintiff testified that he got on the ground, and
while he was face-down on the ground he was punched in the face
by Defendant Ferrero. Id. at 11:22-25, 14:1-7, 51:24-52:9.
Plaintiff also testified that Defendant Ferrero then jumped on
his back, but he did not know if he was being kicked or kneed.
Id. at 12:20-24. Defendants Ferrero and Cullen both testified
that Plaintiff immediately turned in the direction of Officer
Ferrero, or northbound on 10th Street, and started to run. Id.
at 75:3-7, 139:6-9. Officer Ferrero further testified that once
Plaintiff saw him "his eyes got real big" and he immediately
turned back around and tried to run southbound on 10th Street.
Id. at 75:8-11. Officer Cullen corroborated this testimony as he
testified that Plaintiff "attempted to take off running
northbound on 10th and then changed direction." Id. at 139:6-9.
Once Plaintiff switched his direction, Defendant Ferrero tackled
him to the ground with his body, landing on top of Plaintiff.
Id. at 75:10-25. At that point, Plaintiff took the pills that
were in his hand and placed them into his mouth, while Defendant
Ferrero was placing him into custody and screaming at him to
"spit the pills out." Id. at 75:11-16. Plaintiff spit out eleven
green pills, which Defendant Ferrero picked up and placed into a

bag with property receipt number 2987751. Id. at 75:17-19. The pills were positively identified by poison control as clonazepam. Id. at 75:19-22. Officer Ferrero states during the course of these events he never punched, kneed, or kicked Plaintiff. Id. at 79:15-80:1.

While Defendant Ferrero was arresting Plaintiff, Officer Cullen was taking the other two males into custody about six to ten feet south of Defendant Ferrero's position on 10th Street. Id. at 78:2-23, 139:18-140:23. Plaintiff admits that as far as he knows Officer Cullen never touched him during the course of being placed under arrest, and Defendant Ferrero corroborates this testimony. Id. at 63:1-14, 80:2-8. Subsequent to these events, Defendant Ferrero pulled Plaintiff off the ground, and noticed that Plaintiff had a small cut on the right side of his face. Id. at 63:1-14, 79:7-13. Due to the use of force that Defendant Ferrero employed to arrest Plaintiff, he was required to complete a use of force report for the police department regarding the incident. Id. at 85:8-18. In the use of force report that Defendant Ferrero filled out, the summary of the incident contained the following:

> On 1-22-2010 at 1:45 p.m. [Plaintiff] was involved in a Narcotics Transaction at Number one North 10th Street. When Officer Cullen identified himself as a police officer, the above male attempted to run and was tackled to the ground by Officer Ferrero, causing a small cut to his right cheek. [Plaintiff] was taken

> to Saint Joe's Hospital for treatment by 602 emergency
> patrol wagon.

Id. at 86:21-87:6. Having reviewed and considered all of the
evidence concerning this particular course of events, the Court,
as fact finder, finds the Defendants' version of the facts more
persuasive than Plaintiff's. Defendants both testified that
Plaintiff attempted to evade Defendant Ferrero and changed
direction to do so. The use of force report Defendant Ferrero
completed following Plaintiff's arrest also supports this
conclusion. Plaintiff's testimony was also less credible given
his earlier testimony under oath that a drug transaction had
never occurred. Accordingly, the only force Defendant Ferrero
used against Plaintiff's person was through tackling him to the
ground.

After Plaintiff was pulled up off the ground, two
other police officers came along, an African-American police
officer and a Hispanic female police officer,[4] and put him in the
paddy wagon. Id. at 15:12-16:2. Plaintiff was put in the paddy
wagon, with the Hispanic male he was initially with and the
white male who approached him, and they were all taken to the
6th Police District. Id. at 16:3-25. Once at the police station,
Officer Ferrero took a wet paper towel and wiped the side of
Plaintiff's face. Id. at 19:16-20:10. After spending around

---

[4] See supra note 1.

forty-five minutes at the 6th District, Plaintiff and the two other individuals were taken to the 9th District. Id. at 21:3-25. When they arrived at the 9th District, the turnkey officer told the officer that escorted them there that they could not accept Plaintiff with his "face like that." Id. at 22:1-11.

Plaintiff was then taken to Saint Joseph's Hospital. Id. at 22:12-25. Plaintiff testified that that the officer that escorted him to the hospital told him that if he "went along with this process" he would be in "jail for an extra two days, and it was a Friday." Id. at 23:15-23. Plaintiff stated that he told the nurse that he did not want to be treated, and he signed papers concerning the fact that the hospital did not advise him to leave because of his open wound. Id. at 23:15-25:1. Plaintiff did not receive any treatment at St. Joseph's and testified that his police photo demonstrates as much because it was taken subsequent to his return. Id.; see also Police Photo, Pl.'s Ex. 7. The police photo does not show evidence that Plaintiff was treated at St. Joseph's.

Plaintiff returned to the 9th District for six hours to be processed and when he was released he went on his own to the emergency room at Methodist Hospital. Trial Tr. 25:2-26:4. At Methodist Hospital he was evaluated, given a CAT scan, prescribed medication, and told to follow-up with his primary care doctor Joe Renzi. Id. at 26:1-18. At that time a CAT scan

10

was performed revealing no obvious fracture of the orbits.
Methodist Med. Records 9-10, Pl.'s Ex. C. When Plaintiff
followed-up with his primary care doctor, his doctor's
examination of his facial area revealed "some mild swelling and
somewhat of an aperture of the right lateral purpose and
maxillary area, frontal temporal region with mild tenderness and
some swelling around the rostral to the right TMJ." Renzi's
Evaluation, Pl.'s Ex. E. Dr. Renzi further stated that "[t]here
is no sign of active infection. He does have some cervical and
lumbar muscle tenderness." Id. After visiting his primary care
doctor, Plaintiff went to physical therapy for his back and his
neck. Physical Therapy Notes, Pl.'s Ex. D.

    After the close of Plaintiff's evidence, the
Defendants' moved pursuant to Federal Rule of Civil Procedure 50
to dismiss all claims against Police Officer Cullen for
excessive force or failure to intervene. Trial Tr. 67:23-68:10.
The Court granted Defendants' motion for judgment as a matter of
law on the malicious prosecution and abuse of process claims.
Id. at 68:19-69:14. The Court also granted Defendant Cullen's
motion for judgment as a matter of law on the excessive force
claim[5] and Defendant Ferrero's motion for judgment as a matter of

---

[5] The trial transcript reflects that the Court dismissed the case
against Officer Ferrero for use of excessive force, however, the
following sentence states that "the case will proceed against
Officer Ferrero for excessive force and against Officer Cullen

law on the failure to intervene claim. Id. at 69:7-14. Thus, the
only remaining claims for the Court to enter judgment upon are
the excessive force claim against Defendant Ferrero and the
failure to intervene claim against Defendant Cullen.[6]


## V.    CONCLUSIONS OF LAW

The Court first must determine the appropriate
standard of review. Next, the Court must determine whether
Officer Ferrero used excessive force to apprehend the Plaintiff.
Finally, the Court must determine whether Defendant Cullen
failed to intervene.

---

for failure to intervene." Trial Tr. 69:7-14. Because the Court
correctly stated the claims continuing as against each
Defendant, the Court's judgment as a matter of law against
Defendant Cullen for use of excessive force will stand.


[6] During trial there was substantial discussion about the fact
that counsel for the Defendants answered interrogatories in this
case on behalf of the Defendants and without their approval and
stated that Defendant Cullen was the individual who tackled
Plaintiff to the ground. Trial Tr. 96:19-103:13. However, as
Plaintiff and Defendants Ferrero and Cullen testified that
Defendant Ferrero was the officer who tackled Plaintiff, this
issue was rendered inconsequential. Id. at 103:8-14. However, as
the Court stated during trial, the City's practice to answer
interrogatories for defendant police officers when the officers
have not read them and approved of the answers violates Federal
Rule of Civil Procedure 33 and should be discontinued.

A.    <u>Standard of Review</u>

The plaintiff bears the burden of proof on the elements of a § 1983 claim by a preponderance of the evidence. <u>See, e.g.,</u> <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995). Plaintiff has to prove that in light of all of the evidence that his claims are more likely so than not.

B.    <u>Excessive Force</u>

The Fourth Amendment prohibits the use of unreasonably excessive force. <u>Graham v. Connor</u>, 490 U.S. 386, 394-95 (1989). The police may use force "reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a] stop." <u>United States v. Hensley</u>, 469 U.S. 221, 235 (1985). A "court should defer to the officer's observations and judgments in reviewing the totality of the circumstances because officers 'draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" <u>United States v. Focareta</u>, 283 F. App'x 78, 83 (3d Cir. 2008) (quoting <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002) (internal citations omitted)).

The claim of excessive force requires analysis under the Fourth Amendment's "reasonableness" standard, giving careful attention to the facts and circumstances of each particular

13

case. Graham, 490 U.S. at 396. The inquiry is an objective one[7]
and requires "a careful balancing of 'the nature and quality of
the intrusion on the individual's Fourth Amendment interests'
against the countervailing governmental interests at stake," id.
at 396-97 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)),
which includes weighing "whether the suspect posed an immediate
threat to the safety of the officer or others, whether the
suspect was actively resisting arrest, and the severity of the
crime at issue." Curley v. Klem, 298 F.3d 271, 279 (3d Cir.
2002).

The "'reasonableness' of a particular use of force
therefore must be judged from the perspective of a reasonable
officer on the scene, rather than with the 20/20 vision of
hindsight." Graham, 490 U.S. at 396. "The calculus of
reasonableness must embody allowance for the fact that police
officers are often forced to make split-second judgments—in
circumstances that are tense, uncertain, and rapidly evolving—
about the amount of force that is necessary in a particular
situation." Id. at 396-97. Accordingly, "'[n]ot every push or

---

[7] "An officer's evil intentions will not make a Fourth Amendment
violation out of an objectively reasonable use of force; nor
will an officer's good intentions make an objectively
unreasonable use of force constitutional." Graham, 490 U.S. at
397 (internal citations omitted).

shove, even if it may later seem unnecessary in the peace of a
judge's chambers, violates the Fourth Amendment.'" <u>Id.</u> at 396.

Here, Defendant Ferrero used force "reasonably
necessary to protect [his and his partner's] personal safety and
to maintain the status quo." <u>Hensley</u>, 469 U.S. at 235. Defendant
Ferrero admitted to tackling Plaintiff because Plaintiff
attempted to evade the Defendants in a public area near the
corner of 10th and Market Streets. Although Plaintiff suffered
an injury to his face as a consequence, Defendant Ferrero's use
of force in tackling Plaintiff to the ground was reasonable
because Plaintiff attempted to flee when Defendant Cullen
identified himself as a police officer. Additionally, this
struggle lasted only a few minutes and was no longer than
necessary to subdue the Plaintiff and arrest him. Under the
totality of these circumstances, Defendant Ferrero's use of
force was constitutionally, objectively reasonable. Thus, the
Court finds that the Plaintiff fails to meet his burden that
Defendant Ferrero's use of force during Plaintiff's seizure was
constitutionally unreasonable by a preponderance of the
evidence.

C.   <u>Failure to Intervene</u>

Where "'a police officer, whether supervisory or not,
fails or refuses to intervene when a constitutional violation
such as an unprovoked beating takes place in his presence, the

15

officer is directly liable under § 1983.'" Smith v. Mensinger,
293 F.3d 641, 650-51 (3d Cir. 2002) (quoting Byrd v. Clark, 783
F.2d 1002, 1007 (11th Cir. 1986)). More specifically, if a
police officer is present when another officer violates a
citizen's constitutional rights, the first officer is liable
under § 1983 if that officer had reason to know that a
constitutional violation, such as excessive force, was being
used, and that officer had "a reasonable and realistic
opportunity to intervene." Smith, 293 F.3d at 651; see Johnson
v. De Prospo, No. 08-1813, 2010 WL 5466255, at *4 (D.N.J. Dec.
30, 2010). Such an opportunity exists only when excessive force
is used "in [the officer's] presence or otherwise within his
knowledge," Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972), or
if the officer saw his colleague use excessive force or had time
to reach him. Putman v. Gerloff, 639 F.2d 415, 423-24 (8th Cir.
1981).

        As a failure to intervene claim requires the existence
of a constitutional violation, Plaintiff also fails to meet his
burden with respect to his claim against Defendant Cullen.
Because the Court found that Defendant Ferrero did not use
excessive force in seizing the Plaintiff, Defendant Cullen could
not be liable for failing to intervene to prevent a
constitutional violation. Accordingly, the Court finds that the
Plaintiff has not met his burden by a preponderance of the

evidence that Defendant Cullen failed to intervene to prevent a constitutional violation.[8]

## VI.  CONCLUSION

For the reasons set forth above, the Court finds that Defendant Ferrero did not use excessive force against the Plaintiff and Defendant Cullen did not fail to intervene to prevent a constitutional violation. The Court will enter judgment in favor of Defendants and against Plaintiff. An appropriate order will follow.

---

[8] Even if the Court were to find a constitutional violation for use of excessive force by Officer Ferrero, there is insufficient evidence from which to find that Officer Cullen witnessed or had knowledge of the excessive use of force and had a reasonable opportunity to prevent the constitutional violation.